UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CONTROL SYSTEMS, INC.,
    Plaintiff,

v.                              Civil No. 3:11cv1423 (PCD)

REALIZED SOLUTIONS, INC.;
REALIZED PARKING SOLUTIONS, INC.;
WIRELESSCARPARK.COM, INC.; and
JOHN BEYER,
    Defendants.

## RULING ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Plaintiff, Control Systems, Inc. ("CSI"), has moved, on notice, for a temporary restraining order and a preliminary injunction against the Defendants, Realized Solutions, Inc. ("RSI"), Realized Parking Solutions, Inc. ("RPSI"), Wirelesscarpark.com, Inc. ("WCPI"), and John Beyer. [Doc. No. 2]. For the reasons stated herein, the Plaintiff's motion for a temporary restraining order is **denied**. Decision on the Plaintiff's motion for a preliminary injunction hearing is reserved until after the scheduled October 11, 2011 hearing on the motion for a preliminary injunction.

### I. BACKGROUND

This action arises out of a business relationship between CSI, RSI, and Beyer. In 1997, CSI began developing software for handheld devices used to collect point-of-sale-payment from valet parking customers; CSI named the software ZipPark zControl ("the Program"). (Lazowski Decl. ¶ 8.) Since then, CSI has refined the Program to enable integration of hardware used to manage more complex parking operations in both the valet parking and event parking markets. Id. ¶¶ 7, 12-13. CSI has expended considerable resources on this development and refinement. Id. ¶¶ 11, 34.

In order to fill gaps in its software development capabilities, CSI retained RSI in 2003 to provide various information technology services, including assistance in the development of the Program. Id. ¶¶ 18-19. Beyer owns RSI. Id. ¶ 6. As part of this business arrangement, RSI, in a 2005 contract executed by Beyer ("the 2005 Assignment"), agreed to assign away its rights to all software code it helped CSI develop or that it developed in connection with the Program. Id. ¶¶ 20-22, Ex. A.

For several years, CSI and RSI enjoyed a mutually beneficial business relationship. Id. ¶¶ 23-33. During this time, Beyer and other RSI employees learned the identities of existing and prospective CSI customers, had access to CSI's competitive and market intelligence, and were privy to CSI's expansion strategy. Id. The business relationship deteriorated early in 2011. In February, 2011, Beyer formed WCPI and took steps consistent with positioning WCPI to compete with CSI in the market for parking services. Id. ¶¶ 35-37. After allegedly agreeing to assist an existing CSI client directly rather than steer the client's additional business toward CSI, Beyer terminated the relationship between RSI and CSI, pending CSI's retaining of another vendor to provide similar services. (Compl. ¶ 47-48.)

The parties now dispute the scope of the 2005 Assignment and the rights and obligations attendant to the former business relationship between CSI and RSI. In particular, the parties dispute the ownership of certain portions of the Program's source code, id. ¶ 53, and the terms under which each may use the source code, (Lazowski Decl. ¶¶ 41-44). CSI's president and founder, Barry Lazowski, further asserts that Beyer and WCPI are not only competing with CSI, but doing so using CSI's customer intelligence, trade secrets, and source code. (See Lazowski Decl. ¶¶ 38-39, 45-46.) Lazowski does not assert that these disputes have caused or will cause CSI any irreparable loss of business, reputation, or goodwill between September 15, 2011 and

October 11, 2011.

Lazowski also asserts that RSI has hired a former employee of CSI, Laura (Brown) Beyer ("Brown"), as its marketing director; according to Lazowski, Brown has already shared, and continues to share, confidential information she learned while in CSI's employ with Beyer, RSI, and WCPI and is using this information to solicit business for RSI and WCPI from current CSI customers. Id. ¶ 46.

On September 15, 2011, CSI filed this lawsuit, asserting claims[1] for (1) copyright infringement in violation of 17 U.S.C. § 501 (2006), (2) breach of contract, (3) breach of fiduciary duty, (4) the civil remedies provided by 18 U.S.C. § 1030(g) for violations of 18 U.S.C. § 1030, (5) the civil remedies provided by Conn. Gen. Stat. Ann. § 52-570b (West 2011) for violations of Conn. Gen. Stat. Ann. § 53a-251, and (6) violations of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. Ann. § 35-51. (Compl. ¶¶ 57-100.)

Simultaneously, CSI moved for a temporary restraining order and a preliminary injunction. In CSI's proposed temporary restraining order, it seeks: (1) to restrain the Defendants "from using Plaintiff's property, software, or works," (2) the return from the Defendants of all "the data, software, and source codes that belong to CSI," and (3) to restrain WCPI "from unfairly offering products or services to the parking industry." (Pl.'s Proposed TRO at 2.) In its accompanying memorandum, CSI asserts that "[t]ime is of the essence . . . because the parking industry's main trade show . . . is scheduled to begin on October 3, 2011[,] and the Plaintiff needs to have assurances that its products are not unfairly harmed by the illegal actions of the Defendants before that time." (Pl.'s Mem. in Supp. of Mot. for TRO and Prelim. Inj. at 3, 10.) While attempting to schedule a hearing on CSI's motion for a preliminary injunction, counsel for

---

[1] CSI does not assert all these claims against all Defendants.

the Defendants represented to this Court that none of the Defendants would attend this convention or be showing their products or services there.

## II. TEMPORARY RESTRAINING ORDER STANDARD

A temporary restraining order "is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy, 477 F. Supp. 2d 472, 474 (D. Conn. 2007) (quoting Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005)). Moreover, a temporary restraining order "should issue only for the purpose of preserving the status quo and preventing irreparable harm and for just so long as is necessary to hold a hearing." Warner Bros. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1124 (2d Cir. 1989).

A plaintiff seeking a preliminary injunction in a copyright case must demonstrate: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor," (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships between the plaintiff and defendant . . . tips in the plaintiff's favor," and (4) "that the public interest would not be disserved by the issuance of a preliminary injunction." Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal quotations and citations omitted). Although the Second Circuit has not expressly extended this standard to temporary restraining orders, this Court will apply it in view of the long-standing rule that the temporary restraining order standard is the same as the preliminary injunction standard. See, e.g., Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir.1992) (Local 1814).

"[A] showing of probable irreparable harm is the single most important prerequisite for

the issuance of a [temporary restraining order] . . . . Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, . . . and the alleged injury must be one incapable of being fully remedied by monetary damages." Id. (internal citations and quotations omitted). See Local 1814, 965 F.2d at 1228. Likelihood of success on the merits does not require that the party demonstrate that success is an absolute certainty, only "that the probability of . . . prevailing is better than fifty percent." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985).

## III. DISCUSSION

CSI has not met its burden of demonstrating that these circumstances warrant the extraordinary remedy of a temporary restraining order. Specifically, CSI has not shown that, without the requested relief, irreparable harm has inured or will likely inure between the September 15, 2011, filing of this action and the scheduled date of the preliminary injunction hearing, October 11, 2011.

The only specific information CSI cites as demonstrating the need for a temporary restraining order to preserve the status quo is the upcoming parking industry trade show beginning on October 3, 2011. (Pl.'s Mem. in Supp. of Mot. for TRO and Prelim. Inj. at 3, 10.) CSI contends that the Defendants' participation in this trade show will result in irreversible lost business opportunities and disclosure of trade secrets. Id. The Defendants, through counsel, have represented to this Court that they will not so participate. The upcoming trade show therefore presents no basis for issuing a temporary restraining order in order to preserve the status quo.

To the extent that CSI contends that the Defendants' ongoing use of its copyrighted works and trade secrets by itself merits a temporary restraining order, CSI has not clearly shown that

money damages would inadequately compensate the harm it contends it will likely suffer between the September 15, 2011, commencement of this action and the October 11, 2011, hearing. "Where a misappropriator seeks only to use [trade] secrets - without further dissemination or irreparable impairment of value - in pursuit of profit, no [presumption of irreparable harm] is warranted because an award of damages will often provide a complete remedy for such an injury." Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118-19 (2d Cir. 2009). See also Salinger, 607 F.3d at 79-80, 82 (categorical rules and presumptions of irreparable harm inappropriate in considering entitlement to prejudgment remedies). CSI has not shown that the Defendants are actively disseminating its trade secrets, confidential information, or copyrighted works outside their own corporate structures. Nor has CSI shown that the Defendants will, by imminently threatened action, forever impair the value of its trade secrets, confidential information, or copyrighted works. In the absence of such a showing, the assertions of misappropriation and ongoing use of confidential information, trade secrets, or copyrighted works do not, without more, demonstrate that CSI will likely suffer irreparable harm before the October 11, 2011, hearing. See Wabtec Corp., 559 F.3d at 118-119.

In the absence of a clear showing that irreparable harm is likely prior to the preliminary injunction hearing, this Court will not address whether CSI has satisfied the remaining elements of the temporary restraining order standard in detail. See Salinger, 607 F.3d at 79-80 ("[T]he court may issue the injunction only if the plaintiff has demonstrated that he is likely to suffer irreparable injury.") (internal quotations omitted) (emphasis added). CSI has not demonstrated that it will likely suffer hardship, in the absence of a temporary restraining order prior to the October 11, 2011, hearing, greater than that which the order would likely impose on the Defendants by restricting their commercial activities. Accordingly, although CSI has raised

serious merits questions and protecting copyrights and trade secrets generally serves the public interest, this Court concludes that CSI has not clearly carried its burden of persuasion. A temporary restraining order allowing CSI its requested relief to preserve the status quo prior to the hearing will not issue.

## IV. CONCLUSION

For the reasons stated above, CSI's motion for a temporary restraining order [Doc. No. 2] is **denied**. In denying the motion for a temporary restraining order, the Court expressly reserves decision on the Plaintiff's motion for a preliminary injunction [Doc. No. 2].

SO ORDERED.

Dated at New Haven, Connecticut, this 22 day of September, 2011.

/s/ Peter C. Dorsey, SUSDJ
_____
Peter C. Dorsey, U.S. District Judge
United States District Court